ACCEPTED
06-15-00014-CV
SIXTH COURT OF APPEALS
TEXARKANA, TEXAS
3/19/2015 4:52:34 PM
DEBBIE AUTREY
CLERK

## CAUSE NO. 06-15-00014-CV

FILED IN
6th COURT OF APPEALS
TEXARKANA, TEXAS

## IN THE COURT OF APPEALS
## FOR THE SIXTH DISTRICT OF TEXAS, TEXARKANA DIVISION

DEBBIE AUTREY
Clerk

| | |
|---|---|
| **WILLIAM H. SCURLOCK** | § |
| | § |
| **v.** | § |
| | § |
| **JOHN M. HUBBARD** | § |

## APPELLANT'S BRIEF

## ON APPEAL FROM THE 102nd JUDICIAL DISTRICT COURT
## CAUSE NO. 14C1653-102

Cory J. Floyd
Texas Bar No. 24049365

Cammy R. Kennedy
Texas Bar No. 24079245

NORTON & WOOD, L.L.P.
315 Main Street
Texarkana, Texas 75501
Phone: (903) 823-1321
FAX: (903) 823-1325

ATTORNEYS FOR APPELLANT,
WILLIAM H. SCURLOCK

**ORAL ARGUMENT REQUESTED**

# IDENTITY OF PARTIES AND COUNSEL

**Appellant**
William H. Scurlock

**Appellant's Appellate Counsel & Trial Counsel**
Cory J. Floyd
Cammy R. Kennedy
NORTON & WOOD, L.L.P.
315 Main Street
Texarkana, Texas 75501
Phone: (903) 823-1321
FAX: (903) 823-1325
Email: cory@nortonandwood.com
Email: cammy@nortonandwood.com

**Appellee**
John M. Hubbard

**Appellee's Appellate Counsel &Trial Counsel**
Brent M. Langdon
Kyle B. Davis
Langdon & Davis
625 Sam Houston Drive, Suite A
New Boston, Texas 75570
Phone: (903) 628-5571
Fax: (903) 628-5868
Email: blangdon@ldatty.com
Email: kdavis@ldatty.com

**Trial Court Judge**
Judge Bobby Lockhart
102nd Judicial District Court
Bi-State Justice Building
100 N State Line, Box 10
Texarkana, Texas 75501
Phone: (903) 798-3527
Fax: (903) 798-3301

# TABLE OF CONTENTS

Identity of Parties and Counsel ..................................................................i

Table of Contents........................................................................... ii-iii

Index of Authorities.........................................................................iv-vii

Statement of the Case ......................................................................1-2

Issues Presented ...............................................................................3

    ISSUE ONE:    Should the receivership be vacated when the Plaintiff failed to meet his burden and establish a showing of entitlement to the appointment of a receiver to rehabilitate Pecan Point Brewing Co. as required by Texas Business Organizations Code §11.404?..........................................................3

    ISSUE TWO:    Should the receivership and injunction be vacated when the trial court did not condition either on appropriate bonds or the receiver's qualification, as required by Texas law? ......................................3

    ISSUE THREE: Should the temporary injunction be vacated when Plaintiff failed to meet his burden and establish a showing of entitlement to such extraordinary relief?................................................................3

Statement of Facts............................................................................4-6

Summary of the Argument ................................................................7-9

Argument .......................................................................................10-55

    Standard of Review .................................................................10-11

ISSUE ONE:    The receivership should be vacated when the Plaintiff failed to meet his burden and establish a showing of entitlement to the appointment of a receiver to rehabilitate Pecan Point Brewing Co. as required by Texas Business Organizations Code §11.404. ................................................. 12-34

ISSUE TWO:    The receivership and injunction should be vacated when the trial court did not condition either on appropriate bonds or the receiver's qualification, as required by Texas law ......... 34-41

ISSUE THREE: The temporary injunction should be vacated when Plaintiff failed to meet his burden and establish a showing of entitlement to such extraordinary relief ...................................... 41-54

Prayer ................................................................................................. 54-55

Certificate of Compliance ................................................................. 56

Certificate of Service ........................................................................ 56

Appendix

Trial court's judgment dated February 3, 2015
    *Clerk's Record, page 67-73* .................................................. Tab 1

Selected Texas Rules and Statutes
    *Tex. Bus. Orgs. Code Ann. §§11.404, 21.218, 21.719, 21.761;*
    *Tex. Civ. Prac. & Rem. Code Ann. §§64.022, 64.023;*
    *Tex. R. Civ. P. 680, 684, 695a* .............................................. Tab 2

Company Agreement for Pecan Point Brewing Company
    *Reporter's Record, Volume IV, Plaintiff's Exhibit C* ............ Tab 3

December 2, 2014 Written Consent of the Shareholders
    *Reporter's Record, Volume IV, Defendant's Exhibit 4* ......... Tab 4

# INDEX OF AUTHORITIES

**RULES**

Tex. R. Civ. P. 680 .................................................................................. 41

Tex. R. Civ. P. 684 ............................................................................. 35, 40

Tex. R. Civ. P. 695a ....................................................................... 8, 35, 37

**STATUTES**

Tex. Civ. Prac. & Rem. Code Ann. §64.022 (Vernon 1985) ................. 8, 39

Tex. Civ. Prac. & Rem. Code Ann. §64.023 (Vernon 1985) ........... 8, 35, 38

Tex. Bus. Orgs. Code Ann. §11.404(a)(1)(A-E) (Vernon 2011) ........... 7, 13

Tex. Bus. Orgs. Code Ann. §11.404(a)(1)(B) (Vernon 2011) ......... 8, 14, 16

Tex. Bus. Orgs. Code Ann. §11.404(a)(1)(C) (Vernon 2011) ............... 8, 14

Tex. Bus. Orgs. Code Ann. §11.404(b)(3) (Vernon 2011) ....................... 31

Tex. Bus. Orgs. Code Ann. §21.218 (Vernon 2006) ............................... 50

Tex. Bus. Orgs. Code Ann. §21.719 (Vernon 2006) ............................... 30

Tex. Bus. Orgs. Code Ann. §21.761 (Vernon 2006) ............................... 14

**CASES**

*Am. Employers' Ins. Co. v. Johnson*, 47 S.W.2d 463 (Tex.Civ.App.
 —San Antonio 1932), *writ dismissed w.o.j.* (July 6, 1932) ........... 39

*Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249 (Tex. App.Dallas
 2012, pet. denied) ....................................................... 11, 24, 25, 49

*Ballenger v. Ballenger*, 694 S.W.2d 72 (Tex. App.—
Corpus Christi 1985, no writ) ........................................................ 41

*Benefield v. State,* 266 S.W.3d 25 (Tex. App.—Houston
[1st Dist.] 2008, no pet.) ............................................. 10, 16, 31, 33

*BJVSD Bird Family P'ship, L.P. v. Star Elec., L.L.C.*, 413 S.W.3d
780 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ....................... 33

*Bocquet v. Herring*, 972 S.W.2d 19 (Tex. 1998) .................................... 10

*Bryant v. Lake Highlands Dev. Co. of Texas, Inc.*, 618 S.W.2d 921
(Tex. Civ. App.—Fort Worth 1981, no writ) .................................. 40

*Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266
(Tex. App.—San Antonio 2012, no pet.) ......................................... 16

*Citizens' Guar. State Bank of Hutchins v. Nat'l Sur. Co.*,
258 S.W. 468 (Tex. Comm'n App. 1924) ......................................... 38

*Clarendon Nat. Ins. Co. v. Thompson*, 199 S.W.3d 482
(Tex. App. Houston [1st Dist.] 2006, no pet.) ................................ 42

*Covington Knox, Inc. v. State,* 577 S.W.2d 323 (Tex.Civ.App.
Houston [14th Dist.] 1979, no pet.) ............................................... 10

*Elliott v. Weatherman*, 396 S.W.3d 224 (Tex. App.—
Austin 2013, no pet.) ............................................................. 10, 32

*Fortenberry v. Cavanaugh*, 03-04-00816-CV, 2005 WL 1412103
(Tex. App.—Austin June 16, 2005, no pet.)
(not designated for publication) ............................................. 15, 32

*Gibney v. Culver*, 13-06-112-CV, 2008 WL 1822767 (Tex. App.
—Corpus Christi Apr. 24, 2008, pet. denied)
(not designated for publication) .................................................. 25

*Greater Fort Worth v. Mims*, 574 S.W.2d 870 (Tex. Civ. App.
—Fort Worth 1978), dismissed (May 2, 1979) ............................... 32

*Hughes v. Marshall Nat. Bank*, 538 S.W.2d 820 (Tex. Civ. App.—
Tyler 1976), *writ dismissed w.o.j.* (Dec. 1, 1976) .......................... 16

*Humble Exploration Co., Inc. v. Fairway Land Co.*, 641 S.W.2d 934
(Tex. App.—Dallas 1982), *writ refused NRE* (Apr. 27, 1983)........ 12

*Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567
(Tex. 1963) ..................................................................................... 48

*Kerr v. Texas Dept. of Pub.Safety*, 973 S.W.2d 732 (Tex. App.—
Texarkana 1998, no pet.) ................................................................ 11

*Lifeguard Benefit Services, Inc. v. Direct Med. Network Solutions, Inc.*,
308 S.W.3d 102 (Tex. App.—Fort Worth 2010, no pet.) ............... 52

*Lloyd v. Thorp*, 42 S.W.2d 263 (Tex. Civ. App.—Dallas 1931, no
writ)................................................................................................. 38

*Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908
(Tex. App.—Dallas 2006, no pet.) ................................................. 42

*Nationwide Life Ins. Co. v. Nations*, 654 S.W.2d 860 (Tex. App.—
Houston [14th Dist.] 1983, no writ)............................................... 40

*New Amsterdam Cas. Co. v. W. D. Felder & Co.*, 214 F.2d 825
(5th Cir. 1954)................................................................................. 38

*Patton v. Nicholas*, 154 Tex. 385, 279 S.W.2d 848 (1955) ..................... 33

*Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112
(Tex. App.—Corpus Christi 1999, pet. denied) ............................. 11

*Pray-Chamberlain Producers v. Barnhill*, 46 S.W.2d 462 (Tex. Civ.
App.—San Antonio 1932, no writ)................................................. 15

*Remote Control Hobbies, L.L.C. v. Airborne Freight Corp.*,
14-12-01088-CV, 2014 WL 1267073 (Tex. App.—Houston [14th
Dist.] Mar. 27, 2014, no pet.) ....................................................... 33

*Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014), reh'g denied
(Oct. 24, 2014) ............................................... 11, 15, 23, 25, 33, 48

*Rowe v. Rowe*, 887 S.W.2d 191 (Tex. App.—Fort Worth 1994),
writ denied (Oct. 5, 1995) ............................................................ 31

*Rubin v. Gilmore*, 561 S.W.2d 231 (Tex. Civ. App.
—Houston [1st Dist.] 1977, no writ) ............................................. 11

*Synergy Ctr., Ltd. v. Lone Star Franchising, Inc.*, 63 S.W.3d 561
(Tex. App.—Austin 2001, no pet.) ................................................ 42

*Transp. Co. of Texas v. Robertson Transports, Inc.*,
261 S.W.2d 549 (Tex. 1953) ....................................................... 9, 52

*Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601
(Tex. App.—Houston [1st Dist.] 2002, no pet.) ............................. 16

*Walling v. Metcalfe*, 863 S.W.2d 56 (Tex. 1993) .............................. 43, 52

*Williams v. Williams*, 60 Tex. Civ. App. 179, 125 S.W. 937 (1910), *writ
dismissed* ..................................................................................... 7

## STATEMENT OF THE CASE

On December 23, 2014, Plaintiff John M. Hubbard, in his individual capacity and claiming status as "representative of Hubbard & Scurlock, LLC and Pecan Point Brewing Company" filed his Plaintiff's Original Petition, Request for Declaratory Relief, and Application for Injunction. [CR 4-53]. In the lawsuit he asserted causes of action against Defendant William H. Scurlock for declaratory judgment, breach of fiduciary duty, breach of contract, demand for books and records, and brought applications for a temporary restraining order, a temporary injunction, and for the appointment of a receiver under Texas Business Organizations Code §11.404. [*Id*. at 8-13].

Defendant William H. Scurlock answered on January 20, 2015, generally denying all claims, asserting affirmative defenses, and bringing counterclaims for conversion, trade-secret misappropriation, and breach of fiduciary duty. [CR 54-59]. Defendant sought a temporary injunction by separate pleading filed on January 21, 2015. [CR 60-65].

Plaintiff's applications for a temporary injunction and the appointment of a receiver, as well as Defendant's application for a

temporary injunction, were heard by the trial court on January 26, 2015. [RR 2:1-225]. After receiving evidence on January 26, 2015, the Court instructed counsel to return to court on January 30, 2015. [RR 2:218-219]. The trial court heard additional argument, but received no evidence on January 30, 2015. [RR 3:1-85]. Thereafter, on February 3, 2015, the trial court entered its Order for Issuance of Temporary Injunction and Appointment of Receiver. [CR 67-73]. It is from this Order that appeal is taken. [CR 80-81].

## ISSUES PRESENTED FOR REVIEW

ISSUE ONE: Should the receivership be vacated when the Plaintiff failed to meet his burden and establish a showing of entitlement to the appointment of a receiver to rehabilitate Pecan Point Brewing Co. as required by Texas Business Organizations Code §11.404?

ISSUE TWO: Should the receivership and injunction be vacated when the trial court did not condition either on appropriate bonds or the receiver's qualification, as required by Texas law?

ISSUE THREE: Should the temporary injunction be vacated when Plaintiff failed to meet his burden and establish a showing of entitlement to such extraordinary relief?

## STATEMENT OF FACTS

Defendant Bill Scurlock (hereinafter referred to as "Scurlock") is the majority shareholder of Pecan Point Brewing Co., a Texas corporation (hereinafter referred to "Pecan Point"). [RR 2:172]. Pecan Point has six shareholders, one of whom is Plaintiff John Hubbard (hereinafter referred to as "Hubbard"). [RR 2:77]. Scurlock and Hubbard were both directors of Pecan Point until Hubbard's removal on December 2, 2014. [RR 4:Ex. D, G].

Scurlock and Hubbard are each one-half owners of Hubbard & Scurlock, LLC, a Texas limited liability company (hereinafter referred to as "H&S"). [RR 4:Ex. A].

Pecan Point owns and operates a brewery and restaurant in downtown Texarkana, Texas. [RR 2:14; 2:118]. The brewery and restaurant occupy a building owned by H&S. *Id.*

Scurlock and Hubbard contributed efforts and financial resources to Pecan Point and H&S for the purposes of remodeling the building and to establish the brewery and restaurant. [RR 2:23]. Scurlock contributed approximately $250,000 and Hubbard contributed approximately $20,000. [RR 2:177].

4

On December 2, 2014, Scurlock and other shareholders, by written consent signed by a majority of the shareholders, removed Hubbard as a director of Pecan Point and authorized Scurlock to terminate Hubbard's employment. [RR 4:Ex. G]. Hubbard has no employment contract. [RR 2:77: 21-23]. Hubbard was terminated for reasons including deficiencies in his work performance. [RR 2:122; 2:182-3]. Scurlock's counsel forwarded a copy of the resolution to Hubbard's counsel, notifying Hubbard of his removal and termination. [RR 4:Ex. G].

There exists a controversy regarding Hubbard's right to enforce portions of the H&S Company Agreement. [CR 4-59]. Hubbard asserts that actions of Scurlock entitle him to enforce the Company Agreement and purchase Scurlock's one-half interest of H&S. [CR 4-14]. Scurlock denies this assertion. [CR 54-59].

Hubbard's claims regarding Scurlock and Pecan Point arise from his removal as director and subsequent termination of his employment. [CR 6-13]. Hubbard's claims regarding Scurlock and H&S arise from the controversy over the H&S Company Agreement. [CR 5-13].

The trial court appointed Randy Moore to act as receiver, CEO and CFO of Pecan Point Brewery and entered an injunction against Scurlock on February 3, 2015.  [CR 67-73].

## SUMMARY OF THE ARGUMENT

Since as early as 1910, Texas courts have called receiverships the most harsh and drastic of all remedies—an absolute last resort—available only when all other relief is inadequate. *Williams v. Williams*, 125 S.W. 937, 941 (1910, writ dismissed). Forty-one days after filing suit, prior to consideration of any lesser remedy, the trial court ordered a comprehensive receivership over Pecan Point governing every aspect of the business. [CR 67-73].

At the hearing over Hubbard's Applications for Injunction and for Appointment of Receiver, Hubbard sought two avenues for rehabilitative receivership. [CR 12-13].[1] Hubbard failed to demonstrate evidence of the following mandatory elements required by sections 11.404 of the Texas Business and Organizations Code:

- All lesser legal and equitable relief was considered and determined inadequate;

- There exists a deadlock in management;

- The deadlock creates a risk of irreparable injury; and

---

[1] Section 11.404 of the Texas Business and Organizations Code has five possible grounds for appointment of a receiver, but Hubbard only pleaded two. TEX. BUS. ORGS. CODE ANN. §11.404 (Vernon 2011); [CR 12-13].

7

- There was oppressive behavior by one or more of the shareholders.

Tex. Bus. Orgs. Code Ann. §§11.404(a)(1)(B-C), 11.404(b)(3) (Vernon 2011).

Even if some proof showed that this harsh and last-resort remedy was appropriate, the receivership over Pecan Point must be vacated because the trial court instituted the receivership at a date certain, without requiring Hubbard to post requisite bonds under Rule 695a of the Texas Rules of Civil Procedure or Texas Civil Practice and Remedies Code section 64.023 prior to the receivership taking effect. Furthermore, the receiver was not required to properly qualify. Tex. R. Civ. P. 695a; Tex. Civ. Prac. & Rem. Code Ann. §§64.023, 64.022 (Vernon 1985).

The trial court also granted a comprehensive temporary injunction prohibiting Scurlock from operating Pecan Point. An injunction is improper unless the plaintiff shows, and the court finds: (1) the plaintiff will more than likely suffer irreparable injury if the injunction is not granted; (2) the injunction will preserve the status quo; and (3) the plaintiff has shown that he will likely succeed on the merits. *Transp.*

*Co. of Texas v. Robertson Transports, Inc.*, 261 S.W.2d 549, 552 (Tex. 1953).

The record cannot and does not support the enormously high burden of proof required for a receivership, and Hubbard failed to prove any of the elements required for a temporary injunction. As such, the trial court erred.

# ARGUMENT

## I. STANDARD OF REVIEW

### A. Receivership

The appellate court reviews an order appointing a receiver for abuse of discretion. *Benefield v. State,* 266 S.W.3d 25, 31 (Tex. App.—Houston [1st Dist.] 2008, no pet.).

"It is an abuse of discretion for a trial court to rule arbitrarily, unreasonably, or without regard to guiding legal principles, or to rule without supporting evidence." *Bocquet v. Herring,* 972 S.W.2d 19, 21 (Tex. 1998). The review focuses on whether the pleadings and evidence are sufficient to justify a receivership. *See Covington Knox, Inc. v. State,* 577 S.W.2d 323, 325 (Tex.Civ.App.—Houston [14th Dist.] 1979, no pet.); *Benefield,* 266 S.W.3d at 31. The burden of proof to show the existence of circumstances justifying the appointment of a receiver rests on the party seeking the appointment. *Benefield,* 266 S.W.3d at 32; *Elliott v. Weatherman,* 396 S.W.3d 224, 230 (Tex. App.—Austin 2013, no pet.).

## B.    Shareholder Oppression

The burden of proof to prove shareholder oppression is higher than that required for the other elements of a receivership. Shareholder oppression is a question of law for the court. *Ritchie v. Rupe*, 443 S.W.3d 856, 866 (Tex. 2014), reh'g denied (Oct. 24, 2014). The Appellate Court reviews questions of law *de novo* and is not obligated to give deference to the trial court's legal conclusions. *Kerr v. Texas Dept. of Pub. Safety*, 973 S.W.2d 732, 734 (Tex. App.—Texarkana 1998, no pet.). As the arbiter of the law the court of appeals evaluates those conclusions independently. *Pegasus Energy Group, Inc. v. Cheyenne Petroleum Co.*, 3 S.W.3d 112, 121 (Tex. App.—Corpus Christi 1999, pet. denied); *Argo Data Res. Corp. v. Shagrithaya*, 380 S.W.3d 249, 264 (Tex. App.—Dallas 2012, pet. denied).

## C.    Temporary Injunction

The appellate court reviews an order granting a temporary injunction for abuse of discretion. *Rubin v. Gilmore*, 561 S.W.2d 231, 234 (Tex. Civ. App.—Houston [1st Dist.] 1977, no writ).

## II.    ISSUE ONE

The receivership should be vacated when the Plaintiff failed to meet his burden and establish a showing of entitlement to the appointment of a receiver to rehabilitate Pecan Point Brewing Co. as required by Texas Business Organizations Code §11.404.

By written Order dated February 3, 2015, the trial court appointed receiver Randy Moore "to act as the CEO and the CFO of Pecan Point." [RR 3:36].  As this discussion will show, the appointment of Mr. Moore as receiver was an abuse of discretion because it was made contrary to guiding rules or principles and lacked any supporting evidence.

### A.    Hubbard Offered No Evidence of Any of the Requirements for the Appointment of a Receiver.

Due to the severe nature of a receivership, Texas courts have required that a receivership order "must be supported by evidence of each element and conditions" set forth in the receivership statute.  *See Humble Exploration Co., Inc. v. Fairway Land Co.*, 641 S.W.2d 934, 938 (Tex. App.—Dallas 1982), *writ ref'd nre* (Apr. 27, 1983).  Section 11.404

of the Texas Business Organizations Code states that a court may appoint a receiver for a company's property and business if:

- the entity is insolvent or in imminent danger of insolvency;

- the governing persons of the entity are deadlocked in the management of the entity's affairs, the owners or members of the entity are unable to break the deadlock, and irreparable injury to the entity is being suffered or is threatened because of the deadlock;

- the actions of the governing persons of the entity are illegal, oppressive, or fraudulent;

- the property of the entity is being misapplied or wasted; or

- with respect to a for-profit corporation, the shareholders of the entity are deadlocked in voting power and have failed, for a period of at least two years, to elect successors to the governing persons of the entity whose terms have expired or would have expired on the election and qualification of their successors.

Tex. Bus. Orgs. Code Ann. § 11.404(a)(1)(A-E) (Vernon 2011).

Hubbard pleaded two grounds for receivership: (1)*the governing persons are irreparably deadlocked and irreparable injury is threatened by the deadlock,* (Tex. Bus. Org. Code Ann. §11.404(a)(1)(B) (Vernon 2011)), and (2) *the actions of Appellant, Scurlock, were oppressive.* Tex. Bus. Org. Code Ann. §11.404(a)(1)(C) (Vernon 2011). Viewing the record in its entirety, this Court will find no evidence to support any of the requirements in section11.404(a)(1)(B) or (C), much less *all* of them.

## 1.    No Deadlock Exists at Pecan Point.

A deadlock exists when "the persons empowered to manage the business and affairs…are so divided with respect to the management of the business and affairs…that the required vote or consent to take action…cannot be obtained." Tex. Bus. Orgs. Code Ann. §21.761 (Vernon 2006).

A majority of Pecan Point shareholders voted by written resolution on December 2, 2014, to remove Hubbard as director and to vest authority over employment decisions in Scurlock. [D. Ex. 4][2]. There is no evidence, whatsoever, that the persons empowered to

---

[2] Citations to Reporter's Record, volume IV, which contains the exhibits admitted as evidence, are in the following format: "'Party' Exhibit __" (e.g., D. Ex. 4 refers to Reporter's Record, volume IV, Defendant's exhibit 4.).

manage Pecan Point's business and affairs were so divided that the required vote or consent to take action was unobtainable either before or at the time of the hearing.

Quite the contrary, the shareholders did take action to manage the business affairs of Pecan Point by written consent sixty-four days before the receivership was ordered. [D.Ex. 4]. The claim of deadlock arises simply from the fact that a decision was made concerning Hubbard's employment which Hubbard found disagreeable. One minority shareholder's mere disagreement with the majority is not a deadlock. *See Ritchie v. Rupe*, 443 S.W.3d 856 (Tex. 2014), reh'g denied (Oct. 24, 2014); *see also Fortenberry v. Cavanaugh*, 03-04-00816-CV, 2005 WL 1412103, at *1 (Tex. App.—Austin June 16, 2005, no pet.)(not designated for publication).[3]

*Irreparable Injury*

Texas courts have held that no person's property should be seized and placed in the hands of another without a clear showing of imminent irreparable injury. *Pray-Chamberlain Producers v. Barnhill*, 46 S.W.2d

---

[3]There was evidence and argument regarding the existence/non-existence of a deadlock at H&S, a distinct and separate entity, but no receivership was ordered over H&S. [RR 3:1-85].

462, 462 (Tex. Civ. App.—San Antonio 1932, no writ). Furthermore, section 11.404(a)(1)(B) of the Texas Business Organizations Code requires that any alleged deadlock within a company result in actual or threatened irreparable injury to the *entity*, not a *shareholder*. Tex. Bus. Org. Code Ann. §11.404(a)(1)(B) (Vernon 2006).

Texas case law is clear concerning what does and does not constitute irreparable injury. To show irreparable injury, the movant must present evidence that money damages cannot adequately protect the interest. *Benefield*, 266 S.W.3d at 32. Additionally, the movant must present evidence that damages cannot be measured by any certain pecuniary standard. *Tel. Equip. Network, Inc. v. TA/Westchase Place, Ltd.*, 80 S.W.3d 601, 610 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Evidence that irreplaceables such as important records will be lost, removed, or materially injured may constitute irreparable injury. *Hughes v. Marshall Nat. Bank*, 538 S.W.2d 820, 824 (Tex. Civ. App.—Tyler 1976), *writ dismissed w.o.j.* (Dec. 1, 1976). Fear or apprehension of the possibility of injury is not sufficient. *Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 276 (Tex. App.—San Antonio 2012, no pet.).

Hubbard did not testify that money damages could not protect Pecan Point or that damages to Pecan Point could not be measured. In fact, Hubbard testified that he had no knowledge of Pecan Point's finances, whatsoever.

> Q: Do you have knowledge of what the financial condition is of this business?
>
> A: No, sir, I do not. [RR 2:60].

The record is likewise empty of evidence that anything irreplaceable was at risk. In fact, the only individual removing items from the business was Mr. Hubbard. Mr. Hubbard was holding in his personal possession, to the detriment of Pecan Point, certain grains and hops which belonged to Pecan Point. [RR 2:79].

Hubbard did testify that he had fear or apprehension regarding Pecan Point's ability to produce quality beer, without his services:

> Q: Are you concerned with the quality [of the beer] remaining the same?
>
> A: Yes, sir. I'm highly concerned. If a beer was made in a style that Mr. Scurlock had with – well, not that you can even buy kits for this size, but if it

17

was done, the beer is much simpler and basic. [RR 2:59].

He further testified that he was concerned that the brewery would run out of locally produced beer:

> Q:    All right.  Your concern is they're going to run out of beer?
>
> A:    I'm concerned that they're going to run out of house-made beer, yes. [RR 2:58].

However, Hubbard testified that he had no knowledge regarding the quantity of the beer on hand:

> Q:    Well, is it an emergency?  This is an emergency hearing for emergency relief.  You're asking that Bill [Scurlock] be taken out of the salaried position, and you be placed into a salaried position.  Is that an emergent matter?
>
> A:    Yes.
>
> Q:    Okay.  Why?
>
> A:    Because the basis of Pecan Point is making beer, and I do not believe since I've left anyone has made beer.
>
> Q:    But you haven't asked, have you?

18

A:    No, sir. [RR 2:101].

It is noteworthy that Jason Williams, the manager of Pecan Point, with whom Mr. Hubbard has no significant complaint, testified that Pecan Point's beer inventory was adequate for operations. [RR 2:119]. Mr. Williams also testified that the very reason beer was temporarily not brewed at Pecan Point, was due to Mr. Hubbard's poor equipment design. [RR 2:61]; [RR 2:98-99].

Q:    The question was asked of you why not brew any beer since November, or have you brewed any beer since Mr. Hubbard left. Why? Why not?

A:    Because in order to brew those beers, we've had to make modifications to the equipment that Mr. Hubbard had fabricated so that we could clean and sterilize our equipment properly to even be able to brew beer.

Q:    Can you explain?

A:    All the tanks, cook tanks, you know, mash tun, and all the fermenting tanks need to be able to be opened to be cleaned. Through Mr. Hubbard's

19

specifications, they were built as they were, without the ability to be cleaned properly. Now we have had to send the tanks off to get them re-fabricated with manways so that they can actually be inside the keg and cleaned it out. Per our consultant who came in and told us, she goes, you're going to have to be able to get into these fermenting tanks. So we made measures to do that so that we can continue brewing.

Q: Are you ready to brew beer now?

A: As soon as we get those tanks back. [RR 2:138].

Mr. Williams testified that Mr. Hubbard's apprehension was unfounded and that the business was better off without Mr. Hubbard as an employee. [RR 2:123-124].

Q: Do you believe that the businesses are thriving under current management?

A: Yes sir.

Q: Do you believe that returning Mr. Hubbard to the workplace would increase profitability or improve the business in any way?

A: No, sir.

Q: Okay. So if you stayed in your place as managing the business, Mr. Hubbard stayed in his place of brewing the beer, if he's not running the business, you are, and we had some third-party that was taking in the money and paying out the bills that you said we need to pay these bills, would that work?

A: And the facet [sic] that Mr. Hubbard is here is only to brew beer, not to –

Q: Yes, sir.

A: -- do anything, supervision or anything?

Q: Yes, sir.

A: I don't believe it would work. I don't believe he has capability to do that, to produce the good quality product.

21

Q: Okay. Hang on just a second. If Mr. Hubbard was ordered by this Court that he couldn't do anything other than brew beer and that you continued to run the business and that there was one other person out there, that that person took in the money and paid out the bills, that's not going to work?

A: I don't think it would be successful, no, sir.

There cannot be irreparable injury arising from a deadlock if there is no deadlock. However, even if a deadlock is assumed in this case, there was still no showing of irreparable injury to Pecan Point. Additionally, there was no showing of monetary damages, incalculable damages, or damages for which money could not adequately protect.

The only evidence presented was speculation and apprehension. Hubbard testified that he was apprehensive about finances, but he had no factual knowledge of the finances. Hubbard testified he was apprehensive about the quality and quantity of beer brewed at Pecan Point, but he presented no evidence to support such apprehension. Furthermore, the uncontroverted testimony of Mr. Williams shows that

22

any shortcoming in beer quality, or delay in beer production, was the creation of Mr. Hubbard's own shortcomings.

Because the majority of Pecan Point shareholders were actively managing the company as evidenced by a written resolution drafted as late as December 2, 2014, and Hubbard failed to present evidence of irreparable injury, the receivership was granted in error.

## 2. Plaintiff Failed to Prove Oppression

The Texas Supreme Court, in *Richie v. Rupe,* narrowly defined shareholder oppression in the context of conduct governed by section 11.404 of the Texas Business Organizations Code.

Oppression occurs when a corporation's directors or managers abuse authority, while intending to harm a shareholder's interests, and acting inconsistently with the honest exercise of business judgment, thereby creating a serious risk of harm to the corporation. *Rupe*, 443 S.W.3d at 871.

In *Rupe*, the Texas Supreme Court described oppression as more than a visible departure from the standards of fair dealing; more than a violation of fair play, holding that oppression cannot be supported on a

finding that actions defeated a shareholder's reasonable expectations alone. *Id.* at 870-871.

The trial court found "the actions of the governing person, Scurlock as the majority shareholder, is oppressive." [CR 70]. The record of Scurlock's actions, with regards to Pecan Point, stems mainly from exercise of the vote of shares to terminate Hubbard. This decision is consistent with sound business judgment and does not constitute oppression as discussed herein below.

*Hubbard Had No Right to Employment.*

The shareholders' action to terminate Hubbard is not oppressive because Texas law does not recognize a minority shareholder's right to continued employment without an employment contract. *Shagrithaya*, 380 S.W.3d at 266. Absent an employment contract, a shareholder's expectation of continued employment cannot be considered objectively reasonable. *Id.*

Hubbard testified that he had no employment contract. [RR 2:77].

*No Evidence of Disparate Dividends or Compensation was Presented.*

If a minority shareholder can show that another shareholder employed by the company is compensated so far in excess of what is

24

reasonable for his position and level of responsibility that such compensation is, in actuality, a *de facto* dividend in which the minority shareholder does not share, such an act may support a finding of minority shareholder oppression. *Gibney v. Culver*, 13-06-112-CV, 2008 WL 1822767, \*16 (Tex. App.—Corpus Christi Apr. 24, 2008, pet. denied)(not designated for publication); *Shagrithaya*, 380 S.W.3d at 268.

Since the opening of Pecan Point, no dividends have been paid, and no evidence was presented of excess compensation; therefore, there was no evidence of a *de facto* dividend.

*The Honest Exercise of Business Judgment Does Not Constitute Oppression*

The voting of shares, consistent with honest business judgment, for the benefit of the corporation, does not constitute oppression. *Rupe,* 443 S.W.3d at 870. Actions are not oppressive simply because they defeat a shareholder's expectations. *Id.*

There is no evidence in the record to suggest the Shareholder's decision to terminate Hubbard was not consistent with the exercise of

25

"honest business judgment." On the contrary, there exists evidence in support of Scurlock's decision to terminate Hubbard.

Notably, Hubbard was not a good brew-master or employee. Jason Williams testified:

> Q: Do you know why Mr. Hubbard's employment was terminated?
>
> A: Yes, sir.
>
> Q: Please describe that for the Court.
>
> A: Mr. Hubbard's actions as a director caused employee morale to be low by his constant micro-managing and his inexperienced decisions that he made for the business and mostly because of his lack of organization, cleaning abilities and records for his brew master, for being the brew -master.
>
> Q: In your experience, was he a particularly good brew-master for this organization?
>
> A: No, sir.
>
> Q: Did he keep the equipment clean?
>
> A: No, sir.

Q: Have you spent time cleaning up unclean equipment that he left?

A: Yes, sir.

Q: Has any of the beer he produced or participated in the production of been wasted or spoiled?

A: Yes, sir.

Q: Can you describe that, just for the Judge?

A: We've lost some kegs here and there, and then we lost production of about close to 40, 50 percent of one of our brews, just not very organized in cleaning and getting the product out there. So we lost quite a bit due to the non-filtering system that was put into place. So we lost a lot of each keg at a high amount of loss. [RR 2:122]

Hubbard was a poor record-keeper:

Q: Did he keep good records?

A: No records that I'm aware of.

27

Q: Did he provide you with the records that you requested from him?

A: No, sir. [RR 2:122-123].

Furthermore, Scurlock testified Hubbard was a poor employee:

Q: What are some of the specific things he did that resulted in his termination?

A: Well, his responsibility, duties were as brew master, and neither – one of the problems that management, from the general manager to the accountant, to me, had was that John was not sharing the information on brewing with anyone else. Now, it was not simply about wanting a recipe to reproduce the beer, although you could make an argument he was working for hire for Pecan Point. He was receiving a paycheck from Pecan Point. In my experience, that means the work he did at Pecan Point belonged Pecan Point. Yet, he would not share that information, and it wasn't just that we wanted to have the recipes to recreate beer. I mean, that's part of it when you're

28

looking at consistency down the road, but we could not even get the cost of the beer because we didn't have – all we had was a big lump of ingredients but no breakdown on what was used for each beer, and every beer is different. Each recipe is different. But when you don't have recipes, you can't allocate costs in the cost of the product that we made.

Q: Is that information important in determining what you're going to brew next and what you're going to sell next?

A: Well, it's important in knowing how much money you're making, what price to put on the beer to start with, and then you want to, of course, you know, plan ahead on what you're going to do. [RR 2:182-183].

Because Hubbard was not performing his duties, was not a good brew-master, and was a poor record keeper, the shareholders were perfectly within their rights to terminate his employment.

*Failure to Consult With Hubbard Is Not Oppression.*

Shareholder Agreements are valid and enforceable in Texas. Tex. Bus. Orgs. Code Ann. § 21.719 (Vernon 2006).

Hubbard testified that he was not consulted regarding business decisions at Pecan Point. [RR 2:65].

Pecan Point had a Company Agreement. [P. Ex. C]. Pecan Point's Company Agreement states:

"The business and affairs of the corporation shall be managed by the Board of Directors who may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the Certificate of Formation or by these Bylaws directed or required to be exercised or done by the shareholders." *Id.*

Pecan Point's Company Agreement provides for removal of a director by written consent. *See generally, id.* Hubbard was removed by written consent signed by a majority of the shareholders. [P. Ex. G].

Because Hubbard was removed as a director, his right to participate in business decisions ended. Even assuming he had a right to be consulted, no evidence was presented that such lack of

30

consultation "created a serious risk of harm," as required by the test for oppression.

Hubbard's testimony about Scurlock's actions is not evidence of oppression. There was no testimony evidencing an abuse of authority by the managers or directors of Pecan Point. The Company Agreement, signed by Hubbard, reserved business decisions to Pecan Point's directors. Hubbard was removed as a director, for good cause, by a majority of the shareholders. Furthermore, Hubbard made no showing that failure to consult with him created a serious risk of harm. [RR 2:65].

## B. Lesser Remedies Not Attempted.

Section 11.404(b)(3) of the Texas Business Organizations Code conditions the appointment of a receiver on the determination that all other available legal and equitable remedies are inadequate. Tex. Bus. Orgs. Code Ann. §11.404(b)(3) (Vernon 2011) (emphasis added); Benefield, 266 S.W.3d at 31, *See Rowe v. Rowe*, 887 S.W.2d 191, 200 (Tex. App.—Fort Worth 1994), writ denied (Oct. 5, 1995) (observing that statute permitting appointment of receiver over corporation authorizes appointment only if party seeking relief convinces trial court that all

31

other legal and equitable remedies are inadequate). There was no consideration of alternate remedies before a receiver was appointed in this case, and therefore no evidence exists in the record to support this determination.[4]

Even after failed remedies, such as an unsuccessful mediation, more is required prior to the appointment of a receiver. *Cavanaugh*, 2005 WL at *3 .

Texas cases give us examples of lesser remedies which should precede consideration of a receivership as follows:

- A limited receiver was appointed to conduct director's meetings to ensure bylaw compliance. *Greater Fort Worth v. Mims*, 574 S.W.2d 870, 871 (Tex. Civ. App.—Fort Worth 1978), dismissed (May 2, 1979).

- The trial court should have considered an injunction restricting the withdrawal of funds from bank accounts, prior to appointing a receiver. *Weatherman*, 396 S.W.3d at 230.

---

[4]The Court recited that "other available legal and equitable remedies are inadequate." [RR 2:215]. However, the court does not elaborate, and the record is bereft of any evidence supporting such finding.

- The trial court should have ordered a reasonable dividend and enjoined the parties from future misdeeds. *Patton v. Nicholas*, 154 Tex. 385, 399, 279 S.W.2d 848, 858 (1955).

- Appointing a fiscal agent to report periodically to the court. *Rupe*, 443 S.W.3d at 898.

- Enjoining oppressive conduct such as excessive salaries or bonuses to individuals. *Id.*

- Awarding of money damages for oppressive conduct. *Benefield*, 266 S.W.3d at 32.

- The Court's inherent power to hold a party in Contempt. *Remote Control Hobbies, L.L.C. v. Airborne Freight Corp.*, 14-12-01088-CV, 2014 WL 1267073, at *4 (Tex. App.—Houston [14th Dist.] Mar. 27, 2014, no pet.); *BJVSD Bird Family P'ship, L.P. v. Star Elec., L.L.C.*, 413 S.W.3d 780, 782 (Tex. App.—Houston [1st Dist.] 2013, no pet.)

When considering whether the trial court adequately considered lesser remedies, it is remarkable that the Court granted a comprehensive receivership, beyond what even Hubbard requested. Hubbard testified:

33

Q:     Mr. Hubbard, the limited purpose of your request for a receivership is only for that person to control the books and records until such time as we can get to court for this Court to decide upon the ultimate issue of the cause of action relating to declaratory judgment or breach of contract; is that correct?

A:     That is correct, sir.  [RR 2:107].

Absent Hubbard presenting any evidence that a lesser legal or equitable remedy would be inadequate, the court ruled arbitrarily, unreasonably, or without regard to guiding legal principles, or ruled without supporting evidence.  To do so constitutes reversible error.

## III.   ISSUE TWO

The receivership should be vacated when the trial court did not condition the receiver's authority on the posting of appropriate bonds as required by Texas Rule of Civil Procedure §695a, Texas Civil Practice & Remedies Code §64.023 or a receiver's oath as required by Texas Civil Practice and Remedies Code §64.022.

34

### A. Bonds Required

There are two bonds which are the prerequisites to the appointment of a receiver.

First, the applicant must post a bond (hereinafter referred to as "Applicant's Bond") payable to the defendant in the amount fixed by the court, "conditioned for the payment of all damages and costs in such suit, in case it should be decided that such receiver was wrongfully appointed to take charge of such property." Tex. R. Civ. P. 695a. The amount of any such bond must be fixed at a sum sufficient to cover all probable damages and costs." *Id.*

Second, the receiver must post a bond (hereinafter referred to as "Receiver's Bond") approved by the appointing court, in an amount fixed by the court and conditioned on the faithful discharge of his duties as receiver. Tex. Civ. Prac. & Rem. Code Ann. §64.023 (Vernon 1985).

Because the court ordered a temporary injunction in the order appointed a receiver, a third bond (hereinafter referred to as "Injunction Bond" is required under Texas Rule of Civil Procedure 684. Tex. R. Civ. P. 684.

The trial court ordered three bonds as follows:

(1) "Receiver's bond is set at $10,000 which amount is sufficient to cover all probable damages and costs should it be decided that receiver was wrongfully appointed to take charge." [RR 3:53-57].

(2) "Hubbard shall post a corporate bond in his individual capacity in the amount of $100,000 which will fully protect Defendant's rights during the pendency of this action." [RR 3:53].

(3) "Hubbard shall post a corporate bond in his capacity as a shareholder in Pecan Point Brewing Company in the amount of $50,000 which will fully protect Defendant's rights during the pendency of this action." [RR 3:63].

The trial court then ordered "Before the issuance of the *injunction* (emphasis added), Plaintiffs must post bond as ordered payable to Defendants, conditioned and approved as required by law." [CR 73].

The receiver commenced his administration on February 3, 2015, in accordance with the order, with the receiver's bond, and no others, in effect. [CR 67-73]. Hubbard has been unable to secure the two bonds

36

required, and has since filed a Motion To Amend Order Setting Bond on February 20, 2015. [CR 76-79].

## 1. The Receivership Was Not Conditioned on the Posting of the Applicant's Bond.

Texas Rule of Civil Procedure 695(a) governs rehabilitative receiverships and requires "No receiver shall be appointed with authority to take charge of property until the party applying therefor has filed with the clerk of the court a good and sufficient bond." Tex. R. Civ. P. 695a.

The trial court's order dated February 3, 2015, ordered Scurlock to "turn over management of Pecan Point Brewing Company to the Receiver as of February 3, 2015 at 3:00 p.m." [CR 69]. This is error because, instead of conditioning this expedition into receivership on the posting of the Applicant's bond, the receivership was set to take effect at a certain time and place, specifically, February 3, 2015, at 3:00 p.m., regardless of whether any of the required bonds were in place.

Furthermore, it is not clear from the trial court's order whether one of the three bonds ordered constitutes an Applicant's Bond. Regardless, it is clear the trial court abused its discretion because it

established the receivership at a time certain, without regard to the existence of the Applicant's Bond, in direct contravention of Texas Rule of Civil Procedure 695a. This constitutes reversible error.

## 2. The Receiver's Bond Isn't Conditioned on the Faithful Discharge of his Duties.

Before a receiver assumes his duties, he must execute a good and sufficient bond that is (1) approved by the appointing court; (2) in an amount fixed by the court; and (3) conditioned on faithful discharge of his duties as receiver in the named action and obedience to the orders of the court. Tex. Civ. Prac. & Rem. Code Ann. §64.023 (Vernon 1985). Bonds of this nature are generally described as fidelity bonds. *Lloyd v. Thorp*, 42 S.W.2d 263, 264 (Tex. Civ. App.—Dallas 1931, no writ).

Fidelity bonds provide protection against loss attributable to acts of the individual including larceny, malfeasance, fraud or dishonesty. *Citizens' Guar. State Bank of Hutchins v. Nat'l Sur. Co.*, 258 S.W. 468, 470 (Tex. Comm'n App. 1924); *New Amsterdam Cas. Co. v. W. D. Felder & Co.*, 214 F.2d 825, 827 (5th Cir. 1954). Recovery is conditioned on direct proof, by a preponderance of the evidence, of the individual's bad

act. *Am. Employers' Ins. Co. v. Johnson*, 47 S.W.2d 463, 465 (Tex. Civ. App.—San Antonio 1932), *writ dismissed w.o.j.* (July 6, 1932).

Here, the trial court only required the receiver to post bond protecting against "probable damages and costs should it be decided that receiver was wrongfully appointed to take charge." [RR 3:53]. This leaves Scurlock, the other Shareholders, and Pecan Point exposed to the obvious hazard of receiver malfeasance. Although the receiver's bond does provide assurances against wrongful receivership, no requirement for a fidelity bond was placed on the receiver, directly flouting Texas Civil Practice and Remedies Code section 64.023 and constituting error.

## B. Oath Required

Before a person assumes the duties of a receiver, he must be sworn to perform the duties faithfully. Tex. Civ. Prac. & Rem. Code Ann. §64.022 (Vernon 1985).

The order does not require the receiver to take an oath, or qualify in any substitute or alternative fashion, constituting error.

Even if the receivership in this case was proper, an assertion which is not conceded and vehemently contested by Appellant, the bonds required by the trial court were improper, the receivership was

39

allowed to proceed without the appropriate bonds in place, and the receiver was not required to qualify properly, including the taking of an oath. Therefore the receivership should be vacated.

## C. Injunction Bond

Texas Rule of Civil Procedure 684 requires that before the issuance of a temporary injunction the applicant for the injunction must execute and file with the clerk a bond to the adverse party, with two or more good and sufficient sureties, to be approved by the clerk, in a sum fixed by the court. Tex. R. Civ. P. 684. The Temporary Injunction bond is required in order to protect the party against whom the injunction is ordered from whatever damages may result from the time of the issuance of the writ until the injunction is dissolved. *Bryant v. Lake Highlands Dev. Co. of Texas, Inc.*, 618 S.W.2d 921, 923 (Tex. Civ. App.— Fort Worth 1981, no writ).

Failure of an applicant to file the required bond, ordered as a condition precedent to the issuance of a temporary injunction, renders the temporary injunction void *ab initio*. *Nationwide Life Ins. Co. v. Nations*, 654 S.W.2d 860 (Tex. App.—Houston [14th Dist.] 1983, no writ).

In this case, the trial court required that "Before the issuance of the *injunction* (emphasis added), Plaintiffs must post bond as ordered payable to Defendants, conditioned and approved as required by law." [CR 73]. However, because Hubbard was unable to qualify for any of the bonds issued, the temporary injunction must fail.

## IV. ISSUE THREE

The temporary injunction should be vacated because Plaintiff failed to meet his burden and establish a showing of entitlement to such extraordinary relief.

Rule 680, *et. seq*. of the Texas Rules of Civil Procedure govern when a temporary injunction is appropriate. Tex. R. Civ. P. 680. Texas courts have held that a temporary injunction will not, or should not, be granted unless the applicant has shown that irreparable injury will result if such relief is not given and that the applicant has not adequate remedy at law for the damages which may result. *Ballenger v. Ballenger*, 694 S.W.2d 72, 75 (Tex. App.—Corpus Christi 1985, no writ).

In addition to failing to post the required bond for the temporary injunction as discussed above, Hubbard failed to establish any of the required qualifications; therefore, the temporary injunction must fail.

41

### A. Hubbard Showed No Probability of Injury.

Probable injury, which includes imminent harm, irreparable injury, and the lack of an adequate legal remedy, is shown when there is:

- a demonstration of harm;

- for which there can be no real legal measure of damages; or

- none that can be determined with a sufficient degree of certainty, *i.e.,* a noncompensable injury. *Synergy Ctr., Ltd. v. Lone Star Franchising, Inc.*, 63 S.W.3d 561, 567 (Tex. App.— Austin 2001, no pet.).

Probable injury includes the consideration of whether there is no adequate remedy at law for damages. *Clarendon Nat. Ins. Co. v. Thompson*, 199 S.W.3d 482, 494 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

Evidence of fear, apprehension, and/or possibilities are not sufficient to establish any injury, let alone irreparable injury. *Marketshare Telecom, L.L.C. v. Ericsson, Inc.*, 198 S.W.3d 908, 925-6 (Tex. App.—Dallas 2006, no pet.). Damages are usually an adequate remedy at law, and the requirement of demonstrating an interim injury

is not to be taken lightly. *Walling v. Metcalfe*, 863 S.W.2d 56, 57-8 (Tex. 1993).

A review of the record reflects a lack of evidence proving probable injury to Pecan Point should a temporary injunction be denied. Hubbard put on evidence regarding his concern that beer was not being brewed, but as stated earlier, he was uncertain as to whether such fears were founded. As such, Hubbard's concern falls short of the standard required to establish an injury, much less irreparable injury.

**B.    Hubbard Failed to Show a Demonstration of Irreparable Harm and Lack of Adequate Legal Remedy Available.**

Mr. Hubbard was asked about what goal the injunction would accomplish:

> Q:    Mr. Hubbard, you are requesting the Court enter an injunction ordering that you be allowed to return to work at the brewery, appoint a receiver, all that stuff you just went through with your lawyer. What I'm trying to figure out is what exactly would

that accomplish?  What would that accomplish in the next, say, six months?

A:     Well, I believe it would address my biggest concern, that Pecan Point is not producing the beer that its name says it is.

Q:     What else?  What else would a receivership accomplish?

A:     The receivership part?

Q:     Sure.

A:     Right now the books are being done by -- it would tell me the truth of what's happening in the building -- in the business, I'm sorry.

Q:     What else?

A:     I believe it would lead to further -- it would lead towards success of the business in the long-term.

Q:     Anything else?

A:     No, sir.

Q:     You've told me that establishing a receivership would be proper because the company is

not producing the beer it says it is.  Is that a fair summation?

A:    Yes.

Q:    And that it would let you know the truth about the financial condition of the business.  Is that a fair summation?

A:    Yes.

Q:    And that it would help the success of the business; is that correct?

A:    Yes.

Q:    Anything else?

A:    No, sir.

Q:    Let's talk about the injunction, the other temporary relief you mentioned.  What would that accomplish?

A:    I'm sorry, which other temporary relief, sir?

Q:    Well, you went through about 12 things when you were testifying.  You testified to them.

Which of those would be fixed? What would be accomplished by this temporary injunction?

A: Mr. Scurlock and I clearly cannot work together any more. We reached an impasse. Until something is settled, there has to be, there must be an outside presence to run the business, to keep -- to overcome that impasse.

Q: Why do you say that? On what do you rely for that opinion?

A: That my business partner, my ex-business partner and I cannot work together any more. We reached an impasse.

Q: And he should not be entitled to run the business?

A: Correct.

Q: And you should be entitled to work at the business?

A: Correct.

46

Q: Okay. Anything else that the temporary injunction or the receivership would accomplish?

A: No, sir.

Grouped, these goals fall into two categories: (1) Hubbard and Scurlock do not agree on management of Pecan Point; and (2) Pecan Point is not producing the beer Mr. Hubbard wants to produce, which, in his opinion, would lead to success. There was no evidence that disagreement at Pecan Point or differences of opinion concerning the beer strategy were causing economic or other loss. The testimony was "concern," not damage, or speculation about future success, not harm. [RR2:58]; [RR 2:74]. Notably absent was evidence of harm for which there is no real legal measure of damages, or a non-compensable injury.

Accordingly, the court abused its discretion and the temporary injunction must be vacated.

## C. Plaintiff Failed to Plead and Prove a Probable Right of Recovery.

In Hubbard's Original Petition, Request for Declaratory Relief and Application for Injunction, Hubbard pleaded the following: (1) Scurlock breached his fiduciary duty to Pecan Point and Hubbard; (2) Scurlock

47

breached Hubbard's employment contract with Pecan Point; and Hubbard made a demand for the books and records of Pecan Point.

### 1. No Breach of Fiduciary Duty was Proven

To prevail in a claim for breach of fiduciary duty, against Scurlock, on behalf of Pecan Point, Hubbard had to prove that there was a breach, of a duty, and such breach caused Pecan Point damages.

Corporate Officers owe a duty to the corporation they serve. *Int'l Bankers Life Ins. Co. v. Holloway*, 368 S.W.2d 567, 576 (Tex. 1963). Corporate officers do not owe a fiduciary duty to individual shareholders, absent a contract or other special relationship. *Rupe*, 443 S.W.3d 856 at 875-6. In *Rupe,* the Texas Supreme Court confirmed that directors owe a fiduciary duty to the corporation but explicitly stated "we cannot adopt a common-law rule that requires directors to act in the best interests of each individual shareholder at the expense of the corporation. *Id.* at 888.

Implicit in Mr. Hubbard's testimony was the theory that Mr. Scurlock owed a duty to Pecan Point to not terminate Mr. Hubbard, because he was good at brewing beer, and such talent would lead to future success. However, upon close inspection, there is no evidence in

48

the record that Scurlock owed a duty to Pecan Point, to not terminate Hubbard. There is no evidence that Hubbard was good at brewing beer. Actually, the evidence showed the opposite. [RR 2:122-123, 182-183].

There was evidence that Pecan Point was better off without Hubbard. In fact Jason Williams, the manager of Pecan Point, testified:

> Q: All that testimony, you're not telling the Judge to do that. You're not telling him to appoint a receiver and let John come be the brewer, are you?
>
> A: No, sir.
>
> Q: You think the current way is a better way, don't you?
>
> A: Yes, sir. [RR 2:135-136].

Absent evidence of breach of a duty to Pecan Point, or damages arising from such breach, there is no probable right of recovery and the court erred in granting the injunction.

## 2. Hubbard Had No Employment Contract.

As stated above, Texas law does not recognize a minority shareholder's right to continued employment without an employment

49

contract. *Shagrithaya*, 380 S.W.3d at 266.

In his petition, Hubbard claimed he had an employment contract with Pecan Point, but in court, under oath, he testified to the contrary – that he had no employment contract. [RR 2:77]. Absent an employment contract, there can be no breach of such contract. Absent a breach of such contract (a non-existent contract in this case), Hubbard cannot prove a probable right of recovery. Absent evidence of a breach or damages, the court erred in granting the injunction.

### 3. Hubbard's Record Inspection Claim is Unripe Until a Request is Denied.

A shareholder is entitled to examine the books and records of the corporation. Tex. Bus. Orgs. Code Ann. §21.218 (Vernon 2006); *See* [CR 116] (Paragraph 8.03 of the Company Agreement requiring an annual statement). Such right is exercised by written demand stating a proper purpose. Tex. Bus. Orgs. Code Ann. §21.218 (Vernon 2006).

There is no evidence that a written demand, stating a proper purpose was presented. There was the testimony of Hubbard that he was denied the records. [RR 2:60]. However, Hubbard also testified that he received, the very day of the injunction hearing, financial

50

records from the inception of Pecan Point through November 30, 2014. [RR 2:60]. Pecan Point's accountant testified that the financial records were finalized approximately forty-five (45) days after the end of the month. [RR 2:156].

Accordingly, at the hearing on January 26, 2015, fifty-seven days after the end of November, and twenty-six days after the end of December and the end of 2014, the November financial records were the most current records available. There was no testimony that forty-five days was an unreasonable amount of time, that such delay was contrary to Texas Business Organizations Code section 21.218, or that such delay was malicious.

Absent evidence of a written request, stating a proper purpose, Hubbard was not denied his right to inspection. Because of evidence that the most current financial records available were provided, the court ruled arbitrarily, unreasonably, or without regard to guiding legal principles, or without supporting evidence. Simply put, Hubbard's claim for records is either moot, or unripe.

Absent evidence of a denial of such right, Hubbard cannot prove a probable right to recovery, and the court erred in granting the injunction.

**D.    The Relief Granted Does Not Preserve the Status Quo.**

Trial courts may grant interlocutory injunctive relief only for the purpose of preserving the status quo pending final trial on the merits. *Metcalfe*, 863 S.W.2d at 58; *Robertson Transports, Inc.*, 152 Tex. at 558.

*Status quo* is defined by the Texas Supreme Court as "the last, actual, peaceable, non-contested status that preceded the pending controversy." *Id.*

"If an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists *after* the action." *Lifeguard Benefit Services, Inc. v. Direct Med. Network Solutions, Inc.*, 308 S.W.3d 102, 114 (Tex. App.—Fort Worth 2010, no pet.).

Considering the case at hand, the *last, actual, peaceable, non-contested status that preceded the pending controversy* for Pecan Point, was the time prior to Mr. Hubbard's removal as director, and subsequent termination -- approximately December 1, 2014.  [RR 2:40].

52

At that time, the following status existed:

- Scurlock was able to enter Pecan Point at will;

- Scurlock was able to control Pecan Point bank accounts;

- Scurlock was able to possess books and records of Pecan Point;

- Scurlock was able to act as manager and agent for Pecan Point; and

- Scurlock was able to represent to third parties that he had authority to act on behalf of Pecan Point. [D. Ex. 4].

Hubbard had similar authority on or about December 1, 2014.

It is clear from the pleadings and evidence that this temporary injunction was not sought to be status quo preserving but instead was intended to be malicious or punitive. This is evidenced by Hubbard's testimony that he wanted an injunction to grant him control, restoring his employment and terminating Scurlock. [RR 2:62].

The trial court, instead of returning to the peaceable, non-contested status, created an entirely new framework for both parties, contrary to the last status and Texas law. This try at a remedy

constitutes an abuse of discretion because it does not preserve the status quo.

## PRAYER

Thirty-four days after suit was filed, and six days after Scurlock answered the suit, the trial court held an evidentiary hearing considering an application for a rehabilitative receivership. Without evidence, and prior to any attempt to exhaust lesser remedies, the trial court imposed a comprehensive receivership over Pecan Point Brewing Co. ("Pecan Point") ordering the receiver "to act as the CEO and the CFO of Pecan Point." [RR 3:36].

The trial court failed to require the proper bonds for the receivership or injunction. Rather than condition the receivership's start upon the posting of the proper bonds, the trial court improperly ordered the receivership to take effect at a certain time. Furthermore, the court did not require the receiver to properly qualify.

Additionally, the trial court granted the injunction despite Hubbard's failure to meet his burden and establish a showing of entitlement to such extraordinary relief.

54

WHEREFORE, PREMISES CONSIDERED, Appellant asks this Court to vacate the trial court's Order for Issuance of Temporary Injunction and Appointment of Receiver, reverse the trial court's judgment, render judgment denying the application for receivership and the application for injunction, and award to Appellant, William Scurlock, all costs incurred with the filing of this appeal.

Respectfully submitted:

/s/ Cory J. Floyd
Cory J. Floyd
Texas Bar No. 24072348

Cammy R. Kennedy
Texas Bar No. 24079245

NORTON & WOOD, L.L.P.
315 Main Street
Texarkana, Texas 75501
Phone: (903) 823-1321
FAX: (903) 823-1325
Email: cory@nortonandwood.com
Email: cammy@nortonandwood.com

ATTORNEYS FOR APPELLANT,
WILLIAM H. SCURLOCK

## CERTIFICATE OF COMPLIANCE

I hereby certify that, pursuant to Rule 9 of the Texas Rules of Appellate Procedure, Appellant's Brief contains 8, 214 words, exclusive of the caption, identity of parties and counsel, statement regarding oral argument, table of contents, index of authorities, statement of the case, statement of issues presented, statement of jurisdiction, statement of procedural history, signature, proof of service, certification, certificate of compliance, and appendix.

/s/ Cory J. Floyd
Cory J. Floyd

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 19, 2015, a true and correct copy of the Appellant's Brief was forwarded to the counsel below:

Brent M. Langdon
Kyle B. Davis
Langdon & Davis
625 Sam Houston Drive, Suite A
New Boston, Texas 75570
Phone: (903) 628-5571
Fax: (903) 628-5868
Email: blangdon@ldatty.com
Email: kdavis@ldatty.com

/s/ Cory J. Floyd
Cory J. Floyd

CAUSE NO. 06-15-00014-CV

**WILLIAM H. SCURLOCK,**

**Appellant,**

**V.**

**JOHN M. HUBBARD**

**Appellee**

_____

**APPELLANT'S APPENDIX**
_____

**LIST OF DOCUMENTS**

**1.**    Trial court's judgment dated February 3, 2015
        *Clerk's Record, page 67-73*...................................................Tab 1

**2.**    Selected Texas Rules and Statutes
        *Tex. Bus. Orgs. Code Ann. §§11.404, 21.218, 21.719, 21.761;*
        *Tex. Civ. Prac. & Rem. Code Ann. §§64.022, 64.023;*
        *Tex. R. Civ. P. 680, 684, 695a*..............................................Tab 2

**3.**    Company Agreement for Pecan Point Brewing Company
        *Reporter's Record, Volume IV, Plaintiff's Exhibit C*............Tab 3

**4.**    December 2, 2014 Written Consent of the Shareholders
        *Reporter's Record, Volume IV, Defendant's Exhibit 4*.........Tab 4

# TAB 1

Filed 2/3/2015 3:06:35 PM
Billy Fox
District Clerk
Bowie County, Texas
Kelley White, Deputy

Cause No. 14C1653-102

| | | |
|---|---|---|
| JOHN M. HUBBARD, INDIVIDUALLY AND AS REPRESENTATIVE OF HUBBARD & SCURLOCK, LLC, AND PECAN POINT BREWING COMPANY | § § § § § § | IN THE DISTRICT COURT |
| Plaintiff | § § | 102nd JUDICIAL DISTRICT |
| v. | § § | |
| WILLIAM H. SCURLOCK | § § § | |
| Defendant | § | BOWIE COUNTY, TEXAS |

## ORDER FOR ISSUANCE OF TEMPORARY INJUNCTION AND APPOINTMENT OF RECEIVER

After due notice was given, the Court heard Plaintiffs' and Defendant's applications for temporary injunction in this cause.

Plaintiffs, John M. Hubbard, Individually and as Representative of Hubbard & Scurlock, LLC, and Pecan Point Brewing Company, appeared through attorneys, Brent M. Langdon and Kyle B. Davis.

Defendant, William H. Scurlock ("Scurlock"), appeared through attorneys Cory J. Floyd and Marshall C. Wood.

The Court finds after considering the applications of the parties for temporary restraining orders, the pleadings, the affidavits, and arguments of counsel that:

1.     Plaintiffs have a cause of action for declaratory judgment, breach of fiduciary duty, breach of contract,  demand for books and records, application for temporary restraining order and temporary injunction and appointment of receiver against the Defendant.

2.     Plaintiffs have a probable right of recovery against the Defendant upon a trial on the merits of this case.

1

3. The Defendant filed an application for temporary injunction against Plaintiff, John M. Hubbard ("Hubbard").

4. Defendant has demonstrated probable and imminent harm or loss to Defendant to an extent that unless certain grains and hops used in the preparation of beer are not returned immediately Defendant will suffer irreparable injury for which there is no other legal remedy nor adequate measure of damages by any certain pecuniary standard.

5. Hubbard and Scurlock have reached an impasse to the extent that if the Court does not intervene it will cause irreparable harm to Plaintiffs. Additionally, Scurlock terminated Hubbard's employment with Pecan Point Brewing Company and prohibited Hubbard from entering the business at any time thereby prohibiting Hubbard's ability to brew beer which is unique to Pecan Point Brewing Company and would be irreparable for the continued operation of Pecan Point Brewing Company. That Scurlock and his wife did not provide financial information regarding Pecan Point Brewing Company to Hubbard until the day of the hearing on January 26, 2015 of the November 2014 financials, and then at the time of the hearing on January 30, 2015 of the December financials. That Hubbard and other shareholders are entitled to disbursements from Pecan Point Brewing Company.

6. The Court finds Plaintiffs have demonstrated a probable and imminent harm or loss to Plaintiffs to an extent that unless this restraint as outlined below is not ordered immediately Plaintiffs will suffer irreparable injury for which there is neither other legal remedy nor adequate measure of damages by any certain pecuniary standard.

7. Therefore, by this order, the Court ORDERS the following:

a. The grains and hops in possession of Hubbard shall be returned to Pecan Point Brewing Company by Hubbard by 5:00 p.m. on February 9, 2015, and Hubbard is

2

specifically not restrained from Pecan Point Brewing Company from returning the grains and hops as ordered.

b. Scurlock and his wife are temporarily restrained from entering Pecan Point Brewing Company effective February 2, 2015 at 3:00 p.m. or until further order of the Court or at the request of the Receiver.

c. Scurlock and his wife are temporarily restrained, unless requested by the Receiver, from:

    i. controlling, in any manner, any bank accounts associated with Pecan Point Brewing Company;

    ii. possessing, holding, maintaining any books, records or documents of Pecan Point Brewing Company; and

    iii. hindering, preventing or frustrating the business or financial operation of Pecan Point Brewing Company.

d. Scurlock is temporarily restrained from acting as a manager or agent for Pecan Point Brewing Company.

e. Scurlock is temporarily restrained from representing to any third party that he has the authority to act on behalf of Pecan Point Brewing Company unless requested by the Receiver.

f. Scurlock is ordered to turn over management of Pecan Point Brewing Company to the Receiver as of February 3, 2015 at 3:00 p.m.

g. That all financial records of Pecan Point Brewing Company are to be turned over to the Receiver upon the Receivers request either verbally or upon written request.

3

8. The Court finds there is evidence to support the appointment of a receiver because the governing persons of Pecan Point Brewing Company are deadlocked in the management of Pecan Point Brewing Company's affairs, they are unable to break the deadlock, and irreparable injury to Pecan Point Brewing Company is threatened because of the deadlock, and the actions of the governing person, Scurlock as the majority shareholder, is oppressive. The appointment of a receiver is necessary to conserve Pecan Point Brewing Company's property and business and to avoid damage to interested parties, such as the other shareholders who have invested in Pecan Point Brewing Company; that all other requirements of the law are complied with; and that other available legal and equitable remedies are inadequate. That without a receiver, the success, momentum, and good will that Pecan Point Brewing Company has acquired will devalue the interests of Pecan Point Brewing Company's shareholders.

9. Therefore, by this order, the Court ORDERS the appointment of Randy Moore as the receiver and authorizes the Receiver as follows:

a. To act and conduct the business affairs of Pecan Point Brewing Company in a profitable manner respective to the interests of all shareholders;

b. To act as the sole manager of Pecan Point Brewing Company in all business, employment and financial affairs;

c. To act as the accountant/bookkeeper of Pecan Point Brewing Company including:

i. authority to the Receiver and the Receiver alone to sign checks or other financial instruments associated with the business affairs of Pecan Point Brewing Company;

4

ii. to keep in the Receiver's control or possession the books, records or documents of Pecan Point Brewing Company, including payroll disbursements, making deposits or monies received, and payment to any creditors; and

iii. to in effect act as CEO and CFO for Pecan Point Brewing Company.

d.    To act in a manner consistent with sound business practices in the obtaining or terminating any employees with exceptions of the General Manager, Jason Williams, Chef, Justin Turner, and Rebecca Williams who can only be terminated with approval of the Court.

e.    To act consistent with shareholders decision to restrict Hubbard from coming onto the property of Pecan Point Brewing Company and should Hubbard come onto the property of Pecan Point Brewing Company without the specific instruction of the Receiver or as otherwise permitted by the Court that Hubbard will be subject to charges for criminal trespass, (class B).

f.    The Receiver shall have the authority to invite Scurlock or Hubbard to Pecan Point Brewing Company for any reason the Receiver feels is consistent with conducting the business affairs of Pecan Point Brewing Company. If the Receiver elects to invite either Scurlock or Hubbard onto the property of Pecan Point Brewing Company their presence shall not violate the Court's restraining orders.

g.    The Court retains the authority to amend any duties of the Receiver as may be determined necessary to conduct the business affairs.

5

h.      Receiver's bond is set at $10,000.00 which amount is sufficient to cover all probable damages and costs should it be decided that Receiver was wrongfully appointed to take charge.

i.      Receiver shall obtain the bond and submit the cost of the bond to the Court for review and determination of the responsible party.

j.      Receiver shall submit all fees and expenses incurred to the Court for review and determination of the responsible party.

10.      Plaintiffs have exercised due diligence in prosecuting the underlying claim in this cause.

11.      Plaintiffs' injury will outweigh any injury to Defendant that may occur on issuance of this injunction and appointment of receiver.

12.      The injunction and appointment of receiver will not disserve the shareholders interest.

13.      Defendants' intended conduct as described above will change the status quo, which should be maintained in the shareholder's interest.

14.      Hubbard shall post a corporate bond in his individual capacity in the amount of $100,000 which will fully protect Defendant's rights during the pendency of this action.

15.      Hubbard's shall post a corporate bond in his capacity as a shareholder in Pecan Point Brewing Company in the amount of $50,000 which will fully protect Defendant's rights during the pendency of this action.

It is therefore ORDERED that a temporary injunction issue, operative until judgment is entered in this cause as set forth herein.

Pursuant to Rule 692 of the Tex. Rules Civ. Proc., disobedience of this injunction may be punished by the Court by contempt.

Before the issuance of the injunction, Plaintiffs must post bond as ordered payable to Defendants, conditioned and approved as required by law.

Pursuant to Texas Business Organizations Code section 11.404, the Court ORDERS the appointment of Randy Moore to serve as Receiver as set forth herein.

The Court, upon agreement of the parties, ORDERS the parties to mediation on or before March 31, 2015 before James B. Cranford, Jr.

This Court sets the case for a trail on the merits for September 21, 2015.

SIGNED on _Febry 3, 2015_ at _1⁴⁰ P_ .M.

_Bory Lockhart_
JUDGE PRESIDING

APPROVED AS TO FORM:

_____
Brent M. Langdon
Attorney for Plaintiffs

_____
Marshall C. Wood
Attorney for Defendant

7

# TAB 2

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 1. General Provisions (Refs & Annos)
      Chapter 11. Winding up and Termination of Domestic Entity
        Subchapter I. Receivership

V.T.C.A., Business Organizations Code § 11.404

§ 11.404. Appointment of Receiver to Rehabilitate Domestic Entity

Effective: September 1, 2011
Currentness

(a) Subject to Subsection (b), a court that has jurisdiction over the property and business of a domestic entity under Section 11.402(b) may appoint a receiver for the entity's property and business if:

(1) in an action by an owner or member of the domestic entity, it is established that:

(A) the entity is insolvent or in imminent danger of insolvency;

(B) the governing persons of the entity are deadlocked in the management of the entity's affairs, the owners or members of the entity are unable to break the deadlock, and irreparable injury to the entity is being suffered or is threatened because of the deadlock;

(C) the actions of the governing persons of the entity are illegal, oppressive, or fraudulent;

(D) the property of the entity is being misapplied or wasted; or

(E) with respect to a for-profit corporation, the shareholders of the entity are deadlocked in voting power and have failed, for a period of at least two years, to elect successors to the governing persons of the entity whose terms have expired or would have expired on the election and qualification of their successors;

(2) in an action by a creditor of the domestic entity, it is established that:

(A) the entity is insolvent, the claim of the creditor has been reduced to judgment, and an execution on the judgment was returned unsatisfied; or

(B) the entity is insolvent and has admitted in writing that the claim of the creditor is due and owing; or

(3) in an action other than an action described by Subdivision (1) or (2), courts of equity have traditionally appointed a receiver.

(b) A court may appoint a receiver under Subsection (a) only if:

(1) circumstances exist that are considered by the court to necessitate the appointment of a receiver to conserve the property and business of the domestic entity and avoid damage to interested parties;

(2) all other requirements of law are complied with; and

(3) the court determines that all other available legal and equitable remedies, including the appointment of a receiver for specific property of the domestic entity under Section 11.402(a), are inadequate.

(c) If the condition necessitating the appointment of a receiver under this section is remedied, the receivership shall be terminated immediately, the management of the domestic entity shall be restored to its managerial officials, and the receiver shall redeliver to the domestic entity all of its property remaining in receivership.

**Credits**

Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006. Amended by Acts 2011, 82nd Leg., ch. 139 (S.B. 748), § 20, eff. Sept. 1, 2011.

Notes of Decisions (14)

V. T. C. A., Business Organizations Code § 11.404, TX BUS ORG § 11.404
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 2. Corporations (Refs & Annos)
      Chapter 21. For-Profit Corporations (Refs & Annos)
        Subchapter E. Shareholder Rights and Restrictions

V.T.C.A., Business Organizations Code § 21.218

§ 21.218. Examination of Records

Effective: January 1, 2006
Currentness

(a) In this section, a holder of a beneficial interest in a voting trust entered into under Section 6.251 is a holder of the shares represented by the beneficial interest.

(b) Subject to the governing documents and on written demand stating a proper purpose, a holder of shares of a corporation for at least six months immediately preceding the holder's demand, or a holder of at least five percent of all of the outstanding shares of a corporation, is entitled to examine and copy, at a reasonable time, the corporation's relevant books, records of account, minutes, and share transfer records. The examination may be conducted in person or through an agent, accountant, or attorney.

(c) This section does not impair the power of a court, on the presentation of proof of proper purpose by a beneficial or record holder of shares, to compel the production for examination by the holder of the books and records of accounts, minutes, and share transfer records of a corporation, regardless of the period during which the holder was a beneficial holder or record holder and regardless of the number of shares held by the person.

**Credits**
Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006.

V. T. C. A., Business Organizations Code § 21.218, TX BUS ORG § 21.218
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 2. Corporations (Refs & Annos)
      Chapter 21. For-Profit Corporations (Refs & Annos)
        Subchapter O. Close Corporation

V.T.C.A., Business Organizations Code § 21.719

§ 21.719. Validity and Enforceability of Shareholders' Agreement

Effective: January 1, 2006
Currentness

(a) A shareholders' agreement executed in accordance with Section 21.715 is valid and enforceable notwithstanding:

(1) the elimination of a board of directors;

(2) any restriction imposed on the discretion or powers of the board of directors or other person empowered to manage the close corporation; and

(3) that the effect of the shareholders' agreement is to treat the business and affairs of the close corporation as if the close corporation were a partnership or in a manner that would otherwise be appropriate only among partners.

(b) A close corporation, a shareholder of the close corporation, or a party to a shareholders' agreement may initiate a proceeding to enforce the shareholders' agreement in accordance with Section 21.756.

**Credits**
Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006.

V. T. C. A., Business Organizations Code § 21.719, TX BUS ORG § 21.719
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document** © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Business Organizations Code (Refs & Annos)
    Title 2. Corporations (Refs & Annos)
      Chapter 21. For-Profit Corporations (Refs & Annos)
        Subchapter P. Judicial Proceedings Relating to Close Corporation

V.T.C.A., Business Organizations Code § 21.761

§ 21.761. Appointment of Custodian

Effective: January 1, 2006
Currentness

(a) In a judicial proceeding under this section, a court shall appoint a custodian for a close corporation on presentation of proof that:

(1) at a meeting held for the election of directors, the shareholders are so divided that the shareholders have failed to elect successors to directors whose terms have expired or would have expired on qualification of a successor;

(2) the business of the close corporation is suffering or is threatened with irreparable injury because the directors, or the shareholders or the persons empowered to manage the business and affairs of the close corporation under a shareholders' agreement, are so divided with respect to the management of the business and affairs of the close corporation that the required vote or consent to take action on behalf of the close corporation cannot be obtained and a remedy with respect to the deadlock in a close corporation provision has failed; or

(3) the plaintiff or intervenor has the right to wind up and terminate the close corporation under a shareholders' agreement as provided by Section 21.714.

(b) To be eligible to serve as a custodian, a person must comply with all the qualifications required to serve as a receiver under Section 11.406.

**Credits**
Acts 2003, 78th Leg., ch. 182, § 1, eff. Jan. 1, 2006.

V. T. C. A., Business Organizations Code § 21.761, TX BUS ORG § 21.761
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 3. Extraordinary Remedies
      Chapter 64. Receivership
        Subchapter B. Qualifications, Oath, and Bond

V.T.C.A., Civil Practice & Remedies Code § 64.022

§ 64.022. Oath

Currentness

Before a person assumes the duties of a receiver, he must be sworn to perform the duties faithfully.

**Credits**

Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Notes of Decisions (2)

V. T. C. A., Civil Practice & Remedies Code § 64.022, TX CIV PRAC & REM § 64.022
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Statutes and Codes Annotated
  Civil Practice and Remedies Code (Refs & Annos)
    Title 3. Extraordinary Remedies
      Chapter 64. Receivership
        Subchapter B. Qualifications, Oath, and Bond

V.T.C.A., Civil Practice & Remedies Code § 64.023

§ 64.023. Bond

[Currentness](#)

Before a person assumes the duties of a receiver, he must execute a good and sufficient bond that is:

(1) approved by the appointing court;

(2) in an amount fixed by the court; and

(3) conditioned on faithful discharge of his duties as receiver in the named action and obedience to the orders of the court.

**Credits**
Acts 1985, 69th Leg., ch. 959, § 1, eff. Sept. 1, 1985.

Notes of Decisions (18)

V. T. C. A., Civil Practice & Remedies Code § 64.023, TX CIV PRAC & REM § 64.023
Current through the end of the 2013 Third Called Session of the 83rd Legislature

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
Texas Rules of Civil Procedure
Part VI. Rules Relating to Ancillary Proceedings
Section 5. Injunctions

TX Rules of Civil Procedure, Rule 680

Rule 680. Temporary Restraining Order

Currentness

No temporary restraining order shall be granted without notice to the adverse party unless it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before notice can be served and a hearing had thereon. Every temporary restraining order granted without notice shall be endorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; shall define the injury and state why it is irreparable and why the order was granted without notice; and shall expire by its terms within such time after signing, not to exceed fourteen days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record. No more than one extension may be granted unless subsequent extensions are unopposed. In case a temporary restraining order is granted without notice, the application for a temporary injunction shall be set down for hearing at the earliest possible date and takes precedence of all matters except older matters of the same character; and when the application comes on for hearing the party who obtained the temporary restraining order shall proceed with the application for a temporary injunction and, if he does not do so, the court shall dissolve the temporary restraining order. On two days' notice to the party who obtained the temporary restraining order without notice or on such shorter notice to that party as the court may prescribe, the adverse party may appear and move its dissolution or modification and in that event the court shall proceed to hear and determine such motion as expeditiously as the ends of justice require.

Every restraining order shall include an order setting a certain date for hearing on the temporary or permanent injunction sought.

**Credits**
Dec. 5, 1983, eff. April 1, 1984. Amended by order of July 15, 1987, eff. Jan. 1, 1988.

**Editors' Notes**

**COMMENT--1988**

This amendment extends the length of the initial temporary restraining order from 10 days to 14 days.

Notes of Decisions (165)

Vernon's Ann. Texas Rules Civ. Proc., Rule 680, TX R RCP Rule 680
Current with amendments received through August 15, 2014

**End of Document**
© 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
  Texas Rules of Civil Procedure
    Part VI. Rules Relating to Ancillary Proceedings
      Section 5. Injunctions

TX Rules of Civil Procedure, Rule 684

Rule 684. Applicant's Bond

Currentness

In the order granting any temporary restraining order or temporary injunction, the court shall fix the amount of security to be given by the applicant. Before the issuance of the temporary restraining order or temporary injunction the applicant shall execute and file with the clerk a bond to the adverse party, with two or more good and sufficient sureties, to be approved by the clerk, in the sum fixed by the judge, conditioned that the applicant will abide the decision which may be made in the cause, and that he will pay all sums of money and costs that may be adjudged against him if the restraining order or temporary injunction shall be dissolved in whole or in part.

Where the temporary restraining order or temporary injunction is against the State, a municipality, a State agency, or a subdivision of the State in its governmental capacity, and is such that the State, municipality, State agency, or subdivision of the State in its governmental capacity, has no pecuniary interest in the suit and no monetary damages can be shown, the bond shall be allowed in the sum fixed by the judge, and the liability of the applicant shall be for its face amount if the restraining order or temporary injunction shall be dissolved in whole or in part. The discretion of the trial court in fixing the amount of the bond shall be subject to review. Provided that under equitable circumstances and for good cause shown by affidavit or otherwise the court rendering judgment on the bond may allow recovery for less than its full face amount, the action of the court to be subject to review.

**Credits**
June 16, 1943, eff. Dec. 31, 1943. Amended by orders of Oct. 12, 1949, eff. March 1, 1950; June 10, 1980, eff. Jan. 1, 1981.

Notes of Decisions (130)

Vernon's Ann. Texas Rules Civ. Proc., Rule 684, TX R RCP Rule 684
Current with amendments received through August 15, 2014

**End of Document**                                    © 2015 Thomson Reuters. No claim to original U.S. Government Works.

Vernon's Texas Rules Annotated
  Texas Rules of Civil Procedure
    Part VI. Rules Relating to Ancillary Proceedings
      Section 7. Receivers

TX Rules of Civil Procedure, Rule 695a

Rule 695a. Bond, and Bond in Divorce Case

Currentness

No receiver shall be appointed with authority to take charge of property until the party applying therefor has filed with the clerk of the court a good and sufficient bond, to be approved by such clerk, payable to the defendant in the amount fixed by the court, conditioned for the payment of all damages and cost in such suit, in case it should be decided that such receiver was wrongfully appointed to take charge of such property. The amount of such bond shall be fixed at a sum sufficient to cover all such probable damages and costs. In a divorce case the court or judge, as a matter of discretion, may dispense with the necessity of a bond.

**Credits**
June 16, 1943, eff. Dec. 31, 1943.

Notes of Decisions (33)

Vernon's Ann. Texas Rules Civ. Proc., Rule 695a, TX R RCP Rule 695a
Current with amendments received through August 15, 2014

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.

# TAB 3

# COMPANY AGREEMENT
## (BYLAWS)

### OF

## PECAN POINT BREWING CO.
### A TEXAS FOR-PROFIT CORPORATION

### DEFINITIONS

The following terms shall have the following meanings when used in this Company Agreement:

"Company Agreement" and "Bylaws" each mean this Company Agreement, as originally executed and as amended from time to time.

"Corporation" and "Company" shall each mean Pecan Point Brewing Co., a Texas for-profit Corporation.

"Certificate of Formation" shall mean the Certificate of Formation of the Corporation filed in the office of the Texas Secretary of State on January 1, 2014, as the same may be amended from time to time.

"Entity" means any association, corporation, general partnership, limited partnership, limited liability partnership, limited liability company, joint stock association, joint venture, firm, trust, business trust, cooperative, and foreign associations of like structure.

"Person" includes an individual, partnership, limited partnership, limited liability partnership, limited liability company, foreign limited liability company, trust, estate, corporation, custodian, trustee, executor, administrator, nominee or entity in a representative capacity.

"Shareholders" means any person holding title to any shares of the Corporation which have been duly authorized and validly issued, and properly transferred on the books of the Corporation in accordance with the terms hereof. The initial Shareholders of the Corporation are listed on Exhibit "A", attached hereto and incorporated herein for all purposes.

"Code" shall mean the Texas Business Organizations Code, as the same shall be amended from time to time.

"IRS Code" shall mean the Internal Revenue Code of 1986 of the United States of America, 26 U.S.C. 101, et seq., as the same shall be amended from time to time.



"Principal Office" means the office of the Registered Agent as shown in the Certificate of Formation, or the other address as may be established pursuant to these Regulations.

# ARTICLE I

## OFFICES

### Section 1.01. Registered Office and Agent

The registered office of the corporation shall be at the Principal Office. The name of the registered agent at such address is the individual or entity named in the Certificate of Formation, but may be changed by action of the Board of Directors at any time.

### Section 1.02. Other Offices

The corporation may also have offices at such other places both within and without the State of Texas as the Board of Directors may from time to time determine or the business of the corporation may require.

# ARTICLE II

## SHAREHOLDERS

### Section 2.01. Place of Meetings

All meetings of the shareholders for the election of directors shall be held at the Principal Office of the Corporation. Meetings of shareholders for any other purpose may be held at such time and place, within or without the State of Texas, as shall be stated in the notice of the meeting or in a duly executed waiver of notice thereof.

### Section 2.02. Annual Meeting

An annual meeting of the shareholders, shall be held on the first Tuesday of January of each year. If such day is a legal holiday, then the meeting may be held on the next secular day following. At such meeting, the shareholders shall elect directors and transact such other business as may properly be brought before the meeting.

### Section 2.03. Voting List

At least ten days before each meeting of shareholders, a complete list of the shareholders entitled to vote at said meeting, arranged in alphabetical order, with the residence of each and the number of voting shares held by each, shall be prepared by the officer or agent having charge of the stock transfer books. Such list, for a period of ten days prior to such meeting, shall be subject to inspection by any shareholder at any time during usual business hours. Such list shall be

produced and kept open at the time and place of the meeting during the whole time thereof, and shall be subject to the inspection of any shareholder who may be present.

Section 2.04. Special Meetings

Special meetings of the shareholders, for any purpose or purposes, unless otherwise prescribed by statute or by the Certificate of Formation, or by these Bylaws, may be called by the President, the Board of Directors, or the holders of not less than one-tenth of all the shares entitled to vote at the meetings. Business transacted at a special meeting shall be confined to the objects stated in the notice of the meeting.

Section 2.05. Notice

Written, printed or electronic transmission notice stating the place, day, and hour of the meeting and, in case of a special meeting, the purpose or purposes for which the meeting is called, shall be delivered not less than ten (10) nor more than fifty (50) days before the date of the meeting, either personally or by mail, by or at the direction of the President, the Secretary, or the officer or person calling the meeting, to each shareholder of record entitled to vote at the meeting. If mailed, such notice shall be deemed to be delivered when deposited in the United States mail addressed to the shareholder at his address as it appears on the stock transfer books of the corporation, with postage thereon prepaid.

Section 2.06. Quorum

The holders of the majority of the shares issued and outstanding and entitled to vote thereat, present in person or represented by proxy, shall be requisite and shall constitute a quorum at all meetings of the shareholders for the transaction of business except as otherwise provided by statute, by the Certificate of Formation or by these Bylaws. If, however, such quorum shall not be present or represented at any meeting of the shareholders, the shareholders entitled to vote thereat, present in person or represented by proxy, shall have power to adjourn the meeting from time to time, without notice other than announcement at the meeting, until a quorum shall be present or represented. At such adjourned meeting at which a quorum shall be present or represented any business may be transacted which might have been transacted at the meeting as originally notified.

Section 2.07. Majority Vote; Withdrawal of Quorum; Super-Majority Vote for Real Property Transaction

When a quorum is present at any meeting, the vote of the holders of fifty-one percent (51%) of the shares having voting power present in person or represented by proxy shall decide any question brought before such meeting, unless the question is one upon which, by express provision of the statutes or of the Certificate of Formation or of these Bylaws, a different vote is required in which case such express provision shall govern and control the decision of such question. The shareholders present at a duly organized meeting may continue to transact business until adjournment, notwithstanding the withdrawal of enough shareholders to leave less than a quorum.

A vote of fifty-one percent (51%) of the shares issued, outstanding and entitled to vote shall be required to authorize the acquisition, mortgage, sale or other disposal of real property and improvements located thereon by the corporation.

Section 2.08.  Method of Voting

Except as hereinafter provided, every stockholder of record of the corporation shall be entitled at each meeting of stockholders to one vote for each share of stock standing in his name on the books of the corporation.

Section 2.09.  Representation by Proxy

At any meeting of the stockholders, any stockholder may be represented and vote by a proxy or proxies appointed by an instrument in writing subscribed by such shareholder or by his duly authorized attorney-in-fact and bearing a date not more than eleven (11) months prior to such meeting, unless such instrument provides for a longer period.  Each proxy shall be revocable unless expressly provided therein to be irrevocable, and in no event shall it remain irrevocable for a period of more than eleven (11) months.  Each proxy shall be filed with the Secretary of the corporation prior to or at the time of the meeting.

Section 2.10.  Record Date; Closing Transfer Books

The Board of Directors may designate in advance a record date for the purpose of determining shareholders entitled to notice of or to vote at a meeting of shareholders, such record date to be not less than ten (10) nor more than fifty (50) days prior to such meeting; or the Board of Directors may close the stock transfer books for such purpose for a period of not less than ten (10) nor more than fifty (50) days prior to such meeting.  In the absence of any action by the Board of Directors, the date upon which the notice of the meeting is mailed shall be the record date.

Section 2.11.  Action Without Meeting

Any action required by this Company Agreement, the Certificate of Formation, or the Business Organizations Code (including any amendments thereto) to be taken at any annual or special meeting of the Shareholders of the Corporation may be taken without a meeting, without prior notice, and without a vote, if a consent or consents in writing, setting forth the action so taken, shall be signed by the person or persons having not less than the minimum number of votes that would be necessary to take such action at a meeting where all such persons entitled to vote were present and voted.  Any such written consent or consents must be dated, signed and delivered in the manner required by the Texas Business Organizations Code (as amended).  Delivery of an electronic reproduction of any such consent or consents shall have the same force and effect as delivery of an original.

# ARTICLE III

## DIRECTORS

### Section 3.01.  Management

The business and affairs of the corporation shall be managed by the Board of Directors who may exercise all such powers of the corporation and do all such lawful acts and things as are not by statute or by the Certificate of Formation or by these Bylaws directed or required to be exercised or done by the shareholders.

### Section 3.02.  Number; Qualification; Election; Term

The Board of Directors shall consist of two directors, each of whom shall be a shareholder. The directors shall be elected at the annual meeting of the shareholders, except as hereinafter provided, and each director elected shall hold office until his successor shall be elected and shall qualify.

### Section 3.03.  Change in Number

The number of directors may be increased or decreased from time to time by amendment to these Bylaws but no decrease shall have the effect of shortening the term of any incumbent director. Any directorship to be filled by reason of an increase in the number of directors shall be filled by election or at an annual meeting or at a special meeting of shareholders called for that purpose. An amendment to this Company Agreement changing the number of directors shall require the unanimous consent of all of the shareholders.

### Section 3.04.  Removal

Any director may be removed for cause at any special meeting of shareholders, by the affirmative vote of a majority of the number of shares of the shareholders present in person or by proxy at such meeting and entitled to vote for the election of such director if notice of intention to act upon such matter shall be given in the notice calling such meeting.

### Section 3.05.  Vacancies

Any vacancy occurring in the Board of Directors (by death, resignation, removal or otherwise) may be filled by an affirmative vote of a majority of the remaining directors though less than a quorum of the Board of Directors. A director elected to fill a vacancy shall be elected for the unexpired term of his predecessor in office.

### Section 3.06.  Election of Directors

Directors shall be elected by a plurality vote of the shareholders in accordance with Section 2.08 of these Bylaws.

# TAB 4

## WRITTEN CONSENT
## (IN LIEU OF A SPECIAL MEETING)
## OF THE SHAREHOLDERS
## PECAN POINT BREWING CO., A TEXAS CORPORATION

The undersigned, shareholders of Pecan Point Brewing Co. (the "Corporation"), in accordance with Section 6.202 of the Texas Business Organizations Code, and the Company Agreement of the Corporation, hereby adopt the following written consent.

WHEREAS, the persons signing this consent constitute at least the minimum number of votes necessary to adopt the following resolutions; and

WHEREAS, the undersigned desire to take advantage of the Company Agreement executed on January 13, 2014 and the provisions of the Texas Business Organizations Code, and execute a written consent in lieu of formally holding a special meeting of the shareholders and agree that the adoption of the following resolutions shall be valid and have the same force and effect as though such resolutions had been adopted at a formal special meeting of the shareholders; therefore, be it:

RESOLVED, that William H. Scurlock is designated as the sole person with the right to enter, access or modify signatory authority on banking, checking or other financial accounts of the corporation.

RESOLVED, that all other authority to enter, access or modify signatory authority on banking, checking or other financial accounts of the corporation, is hereby revoked, including specifically John M. Hubbard's signatory authority.

RESOLVED, that John M. Hubbard is hereby removed as director of the Corporation.

RESOLVED, that William H. Scurlock has the sole authority to employ, and terminate employment, of any employee of the Corporation without regard to such employee's shareholder status. Included in this authority is the right to terminate John M. Hubbard's employment.

RESOLVED, that this written consent shall have the same force and effect as a formal special meeting of the shareholders for all purposes.

DEFENDANT'S
EXHIBIT

# EXHIBIT G

The undersigned direct that this written consent may be executed in multiple counterparts, all of which shall be considered originals and that this written consent, including multiple counterparts, be filed with the minutes of the proceedings of the shareholders of the Corporation.

December 2, 2014.

_Malcolm A. Smith, 2nd_

_Richard Strong, md_

_William H. Sundock_